UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RICHARD PERRY PRATT, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )   1:13-cv-00249-DBH |
| | ) |
| BANK OF AMERICA NA, | ) |
| | ) |
|     Defendant | ) |

**RECOMMENDED DECISION**

Richard Perry Pratt, a "lawful Christian man" (Complaint, ECF No. 1-3), from Blanchard, Maine, filed suit against the Bank of America in the Piscataquis County Superior Court on June 24, 2013, concerning his 2009 mortgage loan. Pratt alleges the existence of forged documents related to a mortgage loan and that Mortgage Electronic Registration Systems had no standing to transfer his deed to Bank of America. Pratt wants his promissory note returned to him along with the deed of trust. On July 8, 2013, Bank of America removed the action to this court. On the same date the plaintiff filed a motion for entry of default and default judgment in state court, docketed in this court on July 26, 2013, upon receipt of the entire state court record. (ECF No. 10.) On July 17, 2013, Pratt filed an "objection" to the notice of removal which I will treat as a motion to remand. (ECF No. 6.) On July 18, 2013, Bank of America filed a motion to dismiss. (ECF No. 4.) I now recommend that the court deny Pratt's motion to remand and his motion for entry of default and grant Bank of America's motion to dismiss. The relevant factual allegations and applicable legal standards are presented in the course of discussing the pending motions.

A.  **Pratt's Motion to Remand and Motion for Default**

Both of Pratt's motions turn on the question of whether the defendant filed a timely and appropriate response to Pratt's complaint. The record evidence reveals the following uncontested chronology of events. On June 17, 2013, the attorney for Bank of America signed an acknowledgement of receipt of summons and complaint. (ECF No. 1-1.) On June 24, 2013, the summons, complaint, and acknowledgement of receipt of the summons and complaint were filed with the Piscataquis County Superior Court. (ECF No. 9-1, state court docket record.) The summons advised Bank of America that it had 20 days from the date of service to file a responsive pleading. (Id., Page ID # 91.) On July 8, 2013, Bank of America filed its notice of removal. (ECF No. 1.) On July 9, 2013, the clerk set an answer deadline in this court of July 18, 2013. Bank of America filed its motion to dismiss on July 18, 2013. (ECF No. 4.)

   1. *Removal jurisdiction*

Pursuant to the procedure for removal of civil actions set forth at 28 U.S.C. § 1446(b)(1), the defendant had 30 days after receipt of the summons and complaint to remove the action. The notice of removal, entered on the twenty-first day after the acknowledgement of receipt[1], was clearly filed in a timely manner. Furthermore, pursuant to 28 U.S.C. § 1332(a) the requirements for diversity jurisdiction have been met in that this is an action between citizens of different states and the amount in controversy is in excess of $75,000.00. Although Pratt complains that Bank of America has taken inconsistent positions regarding an issue of "equity" in this action and a related foreclosure proceeding in state court (Obj. to Removal, ECF No. 9-1, Page ID #

---

[1] Pursuant to the method of computing time set forth in Rule 6(a)(1) of the Federal Rules of Civil Procedure and the analogous Rule 6(a) of the Maine Rules of Civil Procedure, the day of the event that triggers the period (June 17, 2013) is excluded and the last day of the period is likewise excluded if it is a Saturday, Sunday or legal holiday. Although not relevant to the 30-day removal period, in terms of the 20-day state court response period, it is relevant that July 7, 2013, the twentieth day, was a Sunday, making defendant's answer due on July 8, 2013, if June 17, 2013, was the date of effective service.

101)[2], he nowhere challenges the representation that the amount in controversy is in excess of $75,000. The promissory note which Pratt identifies as at the heart of this controversy reveals the principal amount of the loan was $75,500.00. (Page ID # 98.) In his motion for default judgment Pratt seeks the entry of judgment in the amount of $58,885.45, representing the amounts he has already paid to Bank of America and Quicken Loans on the 2009 loan and a prior 2005 loan.[3] Also, in the complaint's prayer for relief, Pratt asks that the promissory note be returned to him. The requested return of past payments coupled with the value of invalidating the promissory note (and any existing balance) would logically add up to an amount in excess of the original amount of the note because the prior payments would include interest payments.[4] Consequently, the actual amount in controversy exceeds the $75,000 threshold.[5] The removal was proper and the "objection"/motion to remand must be denied.

### 2. *Default*

The second issue Pratt raises is whether the bank was in default at the time of removal on July 8, 2013, because of its failure to respond to the complaint and summons in a timely manner.

---

[2] Reading between the lines, Pratt appears to be saying that Bank of America opposed his request for a jury trial in the bank's foreclosure action based on the equitable nature of a foreclosure action. See Kennebec Fed. Sav. & Loan Ass'n v. Kueter, 1997 ME 123, ¶¶ 4, 7, 695 A.2d 1201, 1202, 1203 (holding that there is no right to a jury trial for equitable claims and that the foreclosure statute is an inherently equitable proceeding regarding the equity of redemption). Pratt feels that the bank's suggestion in its removal petition that his civil action is in the nature of a suit in equity for the appraised value of his home is somehow inconsistent with its earlier representation about the equitable nature of foreclosures. Pratt's argument is a non sequitur. The fact that a jury trial is unavailable in a foreclosure proceeding is entirely unrelated to the determination of the amount in controversy for purposes of federal diversity jurisdiction.

[3] The theory of damages is not explained in Pratt's pleadings and it is unclear what the pre-2009 loan, which was apparently discharged in connection with a refinance, has to do with recoverable damages in this case.

[4] "Waivable affirmative defenses, such as the statute of limitations, are not considered in determining the amount in controversy." Westinghouse Elec. Co., LLC v. Healy, 502 F. Supp. 2d 138, 140 (D. Me. 2007).

[5] The court need not decide whether to base its amount in controversy finding on the appraised value of the home, as Bank of America suggests, or some other measure of Pratt's interest in the property in light of Pratt's request that his promissory note be returned along with all his prior payments to Bank of America. The sum of those payments and the outstanding obligation on the note will logically exceed the original principal amount of the loan, which itself exceeds the $75,000 threshold.

Pratt relies upon the fact that on June 11, 2013, he received a dated summons from the clerk of the Piscataquis County Court. He then mailed the summons and complaint to Rufus Brown, counsel for the bank, in Portland, Maine. Pratt has filed a certified mail receipt bearing a United States Postal Service postmark dated June 11, 2013. According to Pratt's theory, June 11, 2013, should be the day from which the twenty-day response date is calculated, even though there is no evidence in the record as to when the Bank of America actually received the complaint and summons other than counsel's signed acknowledgement of service dated June 17, 2013. (See Plaintiff's Reply, Motion for Default, ECF No. 14.) This record does not support Pratt's contention that June 11, 2013, is the appropriate date for service and I decline to use that date to calculate whether the Bank of America was in default when it filed its notice of removal. Under the proper rules for the computation of time, July 8, 2013, was the date the defendant's response was due.

The final issue Pratt raises is whether the notice of removal was a sufficient responsive pleading to prevent default from entering on July 8, 2013. In the specific context of a removed action, Rule 81(c) of the Federal Rules of Civil Procedure governs the date on which the bank's answer or motion to dismiss would become due. Rule 81(c)(2)(C), read in conjunction with Rule 6(d), dictated that the defendant's answer or motion to dismiss was due no later than July 18, 2013 (ten days (7 + 3) after removal), the deadline noted by the clerk on the docket. The motion to dismiss was timely filed and the defendant is not in default nor should default judgment be entered against it. I recommend denying both motions.

**B.      The Bank of America's Motion to Dismiss**

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted."

4

Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction";  (2) "a short and plain statement of the claim showing that the pleader is entitled to relief";  and (3) "a demand for the relief sought."  Fed. R. Civ. P. 8(a).  In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face."  Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Iqbal, 556 U.S. at 678).

When the plaintiff is a pro se litigant, the Court will review his or her complaint subject to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Additionally, the pleadings of pro se plaintiffs are generally interpreted in light of supplemental submissions, such as any response to a motion to dismiss.  Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003).

A motion to dismiss for failure to state a claim is ordinarily evaluated in light of the allegations contained within the four corners of the plaintiff's complaint.  Young v. Lepone, 305 F.3d 1, 10-11 (1st Cir. 2012).  An exception to the four-corner rule exists when the complaint's allegations "revolve around a document whose authenticity is unchallenged," in which case the document in question "effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."  Id. at 11 (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)).  In this case Bank of America has filed two documents in support of its motion:  the 2009 mortgage (ECF No. 4-1) and the 2009 note (ECF

No. 4-2). In his response to the motion to dismiss Pratt does not dispute the authenticity of these two documents, and both of the documents are integral to the complaint, although they are not the documents containing the alleged "forgery."

### 1. *The allegations*

In paragraphs four through nine of his complaint, Pratt alleges a fairly common series of events involving a promissory note and mortgage generated in the course of a mortgage refinance. On June 19, 2009, Pratt refinanced with Quicken Loans. (Complaint ¶ 6.) At the time of the refinance, Pratt had a preexisting mortgage with Bank of America, which I will refer to as the 2005 mortgage. On July 7, 2009, following the completion of the refinance, Bank of America released the 2005 mortgage on the premises. (Id. ¶¶ 4, 5, 10 & Prayer for Relief ¶ A.) Bank of America then bought the refinance promissory note from Quicken on July 9, 2009, and Quicken Loans sent the deed of trust to be recorded in the registry with Mortgage Electronic Registration Systems, Inc. ("MERS") as a nominee for Quicken Loans. (Complaint ¶¶ 7-8.) On July 19, 2011, the nominee transferred the deed of trust to Bank of America. (Id. ¶ 9.)

In support of his claim Pratt's complaint contains certain conclusory legal assertions. (Complaint, ¶¶ 9(A-F).) The gist of these conclusions is that the separation of the deed of trust from the promissory note by the intervention of MERS as a nominee for Quicken Loans somehow breached the contracts between Pratt and Quicken or Bank of America. Pratt claims that MERS, as nominee, had no "standing" to transfer the note and/or mortgage to Bank of America and that Bank of America has no "standing" to enforce these instruments. In his prayer for relief Pratt wants to be paid back all payments made from December 2005 through March 2013 and he also requests that he be granted possession of the promissory note and the deed of

trust. The complaint is accompanied by two exhibits: an appraisal report and the mortgage release associated with the 2005 mortgage loan.

In addition to the allegations about separation of the mortgage and the note, Pratt's complaint alleges that "[t]his action is for forged documents in Plaintiff[']s mortgage contract with the Defendant Bank of America on June 30, 2009." (Complaint ¶ 3). The complaint does not explain the alleged forgery, but a document filed in this court by Pratt subsequent to the complaint suggests that Pratt believes that a particular contract contains the forged signature of Linda Green, a Bank of America employee, and the fraudulent signature and seal of a notary. "This is the fraudulent document that is the heart of [his] complaint." (See Reply to Motion for Default, Exhibit B, ECF No. 14-4.) It would appear that this document pertains to the November 2005 promissory note and mortgage, or what is referred to in the complaint as Contract # 7023071991. (Complaint ¶ 10.) Pratt filed the same document, without annotations, with the original complaint and identified it as a mortgage release (ECF No. 1-5).

*2. Discussion*

Bank of America requests the summary dismissal of Pratt's complaint on the ground that Pratt fails to allege any cognizable legal theory that would entitle him to the relief he seeks. (Motion to Dismiss, ECF No. 4.) Bank of America asserts that Pratt is mistaken, as a matter of law, when he suggests that the separation of the mortgage from the note or the use of MERS as a nominee somehow invalidated these instruments. (Id. at 2, 4-5.) Bank of America also argues that there is no plausible claim of fraud associated with the release of Pratt's prior mortgage, which release has no bearing on the current mortgage, even if the release contains a forged signature as alleged. (Id. at 5-6.) Pratt's response focuses on advancing the idea that Bank of

America is in default and therefore has no standing to pursue a motion to dismiss. (Response, ECF No. 12.) For reasons already outlined, Pratt is incorrect in that regard.

As for the relief Pratt seeks in his complaint, Pratt has not alleged facts that would authorize the court to order Bank of America to return all of Pratt's prior mortgage payments, turn over the promissory note and mortgage to his possession, or declare the instruments null and void. Proof of a breach of contract action consists of three elements: (1) breach of a material contract term; (2) causation; and (3) damages. Wetmore v. MacDonald, Page, Schatz, Fletcher & Co., LLC, 476 F.3d 1, 3 (1st Cir. 2007) (citing Me. Energy Recovery Co. v. United Steel Structures, Inc., 1999 ME 31, ¶ 7, 724 A.2d 1248, 1250). Pratt's theory is that the separation of his mortgage and promissory note amounted to a "breach of condition" related to his mortgage loan agreement. As a matter of Maine law, separation of the mortgage from the note (*i.e*., possession of the note being in one party and possession of the mortgage being in another) does not nullify or void either instrument. This was acknowledged by the Maine Supreme Judicial Court (Law Court) as early as 1883. Jordon v. Cheney, 74 Me. 359, 361 (1883) ("One who takes a mortgagee's title holds it in trust for the owner of the debt to secure [that for] which the mortgage was given. If a mortgage is given to secure negotiable promissory notes, and the notes are transferred, the mortgagee and all claiming under him will hold the mortgaged property in trust for the holder of the notes."). Moreover, in Maine the modern practice of using MERS as a nominee mortgagee does not preclude foreclosure by a successor-assignee of the mortgage who also obtains possession of the promissory note. See Bank of Am. v. Cloutier, 2013 ME 17, ¶¶ 16, 21, 61 A.3d 1242, 1246-47 (holding that a loan servicer that does not own the beneficial interest in the note may enforce the note through a foreclosure action provided it holds the note, identifies the party with the economic interest in the note, and proves that it has been delegated

8

power to enforce the note); HSBC Mortg. Servs. v. Murphy, 2011 ME 59, ¶¶ 12, 17-18, 19 A.3d 815, 821-23 (vacating summary judgment of foreclosure where the plaintiff failed to provide trustworthy affidavits authenticating the assignments as records of regularly conducted business activity, but nowhere suggesting that a properly executed assignment from MERS is insufficient to confer standing to foreclose); Mortg. Elec. Registration Sys. v. Saunders, 2010 ME 79, ¶¶ 10, 12, 14-15, 2 A.3d 289, 296-97 (describing MERS as a nominee title holder and holding that MERS lacked standing to foreclose only because MERS did not also possess the beneficial interest in the promissory note). To my knowledge there is no Maine case holding that MERS lacks a sufficient legal interest in the mortgages it holds to validly reassign the mortgages to other entities for purposes of foreclosure. There is reliable federal authority that MERS can do so. See CulhaneAurora Loan Servs. of Neb., 708 F.3d 282, 291 (1st Cir. 2013) (rejecting the plaintiff's "thesis" that MERS "did not legitimately hold the mortgage at the time of assignment and, therefore, had nothing to assign").

Pratt's allegations of fraud do nothing to enhance his claim. The elements of fraud include the making of a false representation of material fact and detrimental reliance. Barr v. Dyke, 2012 ME 108, ¶16, 49 A.3d 1280, 1286-87. In his complaint Pratt neither states nor raises a plausible inference that Bank of America made any false representations to Pratt in connection with the release filed in 2009. Nor do Pratt's allegations support a plausible inference that Pratt has been harmed by virtue of any representation concerning his earlier mortgage. Rather, consistent with the ordinary operation of a refinance, Pratt's allegations indicate that Bank of America released the 2005 mortgage when Quicken refinanced the underlying debt in 2009.

**C.     Conclusion**

For the reasons set forth above, I recommend that the court deny Pratt's motion to remand (ECF No. 6) and his motion for entry of default (ECF No. 10).  I further recommend that the court grant Bank of America's motion to dismiss (ECF No. 4).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

September 4, 2013                              /s/ Margaret J. Kravchuk
                                               U.S. Magistrate Judge